UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,  NO. CR. 2:12-0093 WBS

      Plaintiff,

    v.  ORDER RE: MOTION TO SUPPRESS

CASSIDY FRANKLIN,

      Defendant.
_____/

----oo0oo----

        Pursuant to a search warrant for evidence related to an investigation into a medical marijuana collective, law enforcement officers seized child pornography from the residence of defendant Cassidy Franklin on Turnbridge Welles, in Chico, California.  On March 8, 2012, the Grand Jury indicted defendant for receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2).  (Docket No. 1.)  Defendant now moves to suppress evidence from the search.

        In May 2010, state law enforcement agents with the Butte (County) Interagency Narcotics Task Force ("BINTF") began investigating shops selling marijuana to determine if they were

1

in compliance with California's Compassionate Use Act, also known as Proposition 215, and the Medical Marijuana Program.  (Def.'s Mot. to Suppress Ex. A ("BSW 10-177") (Docket No. 30).)  As part of the investigation, BINTF planned to purchase marijuana from the California Harm Reduction Cooperative ("CHRC").  (Id.)  At CHRC on May 11, 2010, an undercover officer used a fraudulent Proposition 215 recommendation for medical marijuana, made from a photocopy, to purchase marijuana.  (Id.)  Later, on May 25, 2010, that same officer returned to CHRC and purchased additional marijuana.  (Id.)  The affidavit does not state that the defendant was present at either of these sales.

        On May 21, 2010, two additional undercover officers attempted to buy marijuana at CHRC.  (Id.)  One had a valid Proposition 215 recommendation and the other had a fraudulent recommendation made on a computer.  (Id.)  The officers identified defendant as one of the employees working that day.  (Id.)  Defendant, in addition to another employee named Mike, told the officers that there were 600 members and "no real owner" of CHRC, but that there was a "board of directors."  (Id.)  Mike was on the board.  (Id.)  Mike explained, however, that it was "mainly a family run business at this time."  (Id.)  On that day, neither officer was able to purchase marijuana because their recommendations could not be confirmed.  (Id.)

        The affidavit indicates that, through surveillance of CHRC, officers were able to identify one individual, Donald Fetter, as having "dominion and control" over CHRC because he had been seen unlocking CHRC prior to the business opening.  (Id.)  They identified another individual, David Brawley, who also

2

worked at CHRC as residing in the same home as Fetter.  (Id.) According to the affidavit, this corroborated the employees' statement that CHRC was a family-run business.  (Id.)  The affidavit also states that Officer Hancock checked the California Secretary of State business records and noted that CHRC is registered as a corporation.  (Id.)  Officer Hancock concluded that defendant's presence at the business, coupled with the facts that he is listed as the agent for service of process with the Secretary of State and his vehicle is registered to "CHRC-Cassidy Franklin," makes him "more than a mere employee."  (Id.)

        Finally, the affidavit contains information from a detective with the Los Angeles police department, Eric Bixler. (Id.)  Detective Bixler had investigated and prosecuted approximately fifteen medical marijuana dispensaries in Los Angeles and found that the "owner/operators's of these dispensaries take important evidence with them to their homes to include, proceeds, product, receipts and marijuana plants." (Id.)  The affidavit also stated that in Officer Hankcock's experience, persons engaged in marijuana cultivation often maintain evidence of that cultivation in their homes.  (Id.) Such evidence may be present even when the individual in control of the location to be searched is claiming to operate a cooperative or business under the limitations of Proposition 215. (Id.)

        In his motion to suppress, defendant argues that the search warrant was not supported by probable cause and that the affidavit in support of the warrant was so lacking in indicia of probable cause that official belief in its existence was

objectively unreasonable.  The court agrees.[1]

Probable cause exists to support a search warrant when "considering the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Ocampo, 937 F.2d 485, 490 (9th Cir. 1991) (quoting United States v. Rodriguez, 869 F.2d 479, 484 (9th Cir. 1989)); see United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006) ("[Probable cause means] fair probability, not certainty or even preponderance of the evidence.") (internal quotation marks and citation omitted).  A magistrate judge makes this determination "on the basis of practical, common-sense considerations."  Ocampo, 937 F.2d at 490.  There must also exist a "reasonable nexus between the activities supporting probable cause and the locations to be searched."  Id.

"A magistrate's determination of probable cause should be paid great deference by reviewing courts."  Illinois v. Gates, 462 U.S. 213, 236 (1983) (internal quotation marks and citation omitted); see Millender v. County of Los Angeles, 620 F.3d 1016, 1024 (9th Cir. 2010).  "Deference to the magistrate, however, is not boundless."  United States v. Leon, 468 U.S. 897, 914 (1984). Courts should not "defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for

---

[1] Defendant also argues that the warrant was overbroad and that Offcier Hancock's failure to mention that he did not know whether the agent for service of process was also the owner/operator was a reckless omission.  Because the court concludes that there was no probable cause for the warrant, it need not decide these issues.

4

determining the existence of probable cause.'" Id. at 915 (quoting Gates, 462 U.S. at 239); see United States v. Clark, 31 F.3d 831, 834 (9th Cir. 1994).

"For probable cause, an affidavit must establish a reasonable nexus between the crime or evidence and the location to be searched." United States v. Crews, 502 F.3d 1130, 1136-37 (9th Cir. 2007). The basis for probable cause to search defendant's residence in the affidavit is Detective Bixler's experience that "owner/operators" of marijuana dispensaries take evidence with them to their homes and Officer Hancock's experience that marijuana cultivators do the same. Moreover, the Ninth Circuit has repeatedly affirmed the searches of homes of suspected drug dealers even where there is no direct evidence linking the homes to the illegal activity because it is reasonable to infer that a drug dealer will keep evidence of his illegal activity in his home. See, e.g., United States v. Fernandez, 388 F.3d 1199, 1254 (9th Cir. 2004), modified, 425 F.3d 1248 (9th Cir. 2005); United States v. Fannin, 817 F.2d 1379, 1381-82 (9th Cir. 1987); United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986). In this case, however, reliance on these inferences was unwarranted because the affidavit does not provide probable cause that defendant was either an owner/operator of CHRC or that he was cultivating or dealing drugs.

First, the affidavit lacks probable cause that defendant was engaged in marijuana cultivation or drug dealing. He worked at a marijuana dispensary, but this fact alone cannot give rise to an inference of criminality under California law

5

because specified persons engaged in the cooperative or collective production of marijuana are immune from criminal sanctions for the sale of marijuana.[2]  Although on two occasions an officer who had joined the CHRC cooperative with a fraudulent recommendation was able to purchase marijuana from CHRC, there is no evidence connecting defendant to those purchases or suggesting that he had knowledge of them.  Defendant's employment at a business where illegal activity might be occurring does not alone create probable cause that he was engaged in that illegal activity.  See Bravo v. City of Santa Maria, 665 F.3d 1076, 1085 (9th Cir. 2011) (generalized statements in affidavit that it is common for families of gang members to assist other members of the gang was insufficient to support probable cause to search the home of gang member's family); United States v. McCarty, 648 F.3d 820, 830 (9th Cir. 2011) ("Searches and seizures are ordinarily unreasonable in the absence of individualized suspicion of wrongdoing and the circumstances under which a warrantless search not supported by probable cause may be considered reasonable

---

[2] The Medical Marijuana Program provides: "Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under" certain sections of the Health and Safety Code, including section 11360, which prohibits the sale of marijuana.  Cal. Health & Safety Code § 11362.775; see also People v. Urziceanu, 132 Cal. App. 4th 747, 785 (3d Dist. 2005) ("[T]he Legislature also exempted those qualifying patients and primary caregivers who collectively or cooperatively cultivate marijuana for medical purposes from criminal sanctions for possession for sale, transportation or furnishing marijuana, maintaining a location for unlawfully selling, giving away, or using controlled substances, managing a location for the storage, [and] distribution of any controlled substance for sale . . . .").

under the Fourth Amendment are very limited.") (internal quotation marks and citations omitted).

The affidavit's discussion of any wrongdoing on defendant's part is limited to describing a single occasion when two undercover officers attempted to obtain marijuana while defendant was working. The officers were unable to purchase any marijuana, however, because their recommendations could not be verified. Additionally, nothing in the affidavit suggests that defendant actually cultivated marijuana. The inferences pertaining to drug dealers and marijuana cultivators did not therefore provide probable cause to search defendant's house because the affidavit contained no evidence that he was dealing drugs or cultivating them.[3]

Second, there is scant evidence in the affidavit to support the conclusion that defendant was an owner/operator of CHRC. The affidavit appears to rely on defendant's status as the agent for service of process for CHRC to show that he was an owner/operator. However, an agent for service of process in California can be any "natural person residing in this state or a

---

[3] Even had the affidavit contained probable cause to believe that defendant was engaged in illegal activity, it is still doubtful that the inference pertaining to drug dealers would apply. That inference is reasonable only because of the underground nature of drug trafficking and the resulting necessity that participants keep evidence of their activities in their homes because they have no public, overt place of business. Here, CHRC operated its marijuana dispensary in the open, pursuant to California statute. In such a case, items related to marijuana sales, including records, would most likely be kept at the business, with the exception of what an owner/operator might bring home. Cf. U.S. v. Garcia, 809 F. Supp. 2d 1165, 1170-71 (2011) (declining to extend the reasoning of the inference pertaining to drug dealers to find probable cause to search a drug user's home solely because it is common for drug users to have additional drugs and paraphernalia at their residences).

7

corporation that has complied with [certain requirements]." Cal. Corp. Code § 1502(9)(b).  There is no requirement that the agent for service of process for a corporation be the owner of that corporation, and it is common practice for companies to use unrelated corporations or persons as such agents.  Thus, to the extent that it would be reasonable to search the home of the owner/operator of CHRC, the affidavit gave insufficient grounds to believe defendant was such a person.

Although the fact that defendant's car was also registered to CHRC might suggest that he had a larger role in the business, it would be unreasonable to infer from that fact that defendant was also an owner/operator.  The affidavit itself negates any such conclusion.  The affidavit states that another individual, Fetter, had "dominion and control" over CHRC.  The affidavit also stated that CHRC was a "family run business."  And while it identified Fetter and Brawley as probable members of the managing family, it made no connection between Fetter and defendant.  Any inference to be made based on Detective Bixler's experience could only have been made as to Fetter, or perhaps Brawley, not defendant.

In addition to the lack of any probable cause suggesting that evidence of a crime would be at defendant's residence, the affidavit is not clear what crime the warrant intended to find evidence of.  The affidavit provides no suggestion of any illegal activity on the part of defendant, other than that he worked at a dispensary where a person had purchased marijuana with a fraudulent recommendation.  It states that the payment of money for marijuana is the crime of sale of

8

marijuana in violation of California Health and Safety Code section 11360.  However, as explained above, certain qualified persons may associate collectively or cooperatively to cultivate marijuana for medical purposes under California law.  <u>See</u> Cal. Health & Safety Code § 11362.775; <u>see also</u> <u>Urziceanu</u>, 132 Cal. App. at 785 (2005) ("[Section 11362.755's] specific itemization of the marijuana sales law indicates it contemplates the formation and operation of medicinal marijuana cooperatives that would receive reimbursement for marijuana and the services provided in conjunction with the provision of that marijuana."). In such a case, it would seem only that "distribut(ing) marijuana for profit" is prohibited.  <u>See</u> Cal. Health & Safety Code § 11362.765.  The affidavit is devoid of any facts linking defendant to such activity.

Even though the court concludes that the search warrant was invalid, it must also consider whether the good faith exception applies.  In <u>United States v. Leon</u>, 468 U.S. 897 (1984), the Supreme Court held that when an officer acts "in the objectively reasonable belief that [his] conduct did not violate the Fourth Amendment," evidence seized under the authority of a search warrant that is later invalidated should not be suppressed.  <u>Leon</u>, 468 U.S. at 918.  The Court defined its test as an objective one that "requires officers to have a reasonable knowledge of what the law prohibits."  <u>Id.</u> at 919 n.20.  While it recognized that each inquiry would be fact-specific, it found four situations in which reliance on an invalidated warrant could not be deemed to be in good faith: (1) the affiant knowingly or recklessly misleads the magistrate with false information or

9

material omissions; (2) the magistrate "wholly abandoned his judicial role"; (3) the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant itself is facially deficient in its description of the place to be searched or the things to be seized.  Id. at 923; see id. at 922 n.23 (identifying the appropriate question as "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization").  For the good faith exception to apply, "the officer's affidavit must establish at least a colorable argument for probable cause."  United States v. Luong, 470 F.3d 898, 903 (9th Cir. 2006).  This standard is met if the affidavit provides "evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause."  Leon, 468 U.S. at 926.

      Here, the court finds that Officer Hancock's asserted belief in the existence of probable cause was entirely unreasonable.  The affidavit's showing of probable cause depended on the inference that a drug dealer, marijuana cultivator, or an owner/operator of a marijuana dispensary takes home evidence of drug dealing or the illegal sale of drugs.  However, as explained above, it was entirely unreasonable to apply any such inference to defendant in this case.  First, even if the inference pertaining to drug dealers applies in a case where marijuana is sold openly at a place of business, the affidavit fails to link defendant with any illicit drug sales.  The affidavit also fails to tie defendant to any marijuana cultivation.

      Second, serving as an agent for service of process and

10

driving a company car, without more, does not make one an owner/operator of a business.  Such facts here show only that defendant was a trusted employee of a business that did not confirm a fraudulent medical marijuana recommendation.  The unreasonableness of inferring anything more is confirmed by the affidavit itself: Fetter--not defendant--is identified as the probable owner/operator of CHRC.  And while it may be reasonable to conclude that an owner/operator may take home records and other items related to the business, it is not reasonable to conclude that an employee--even one who may have a more significant role in the business--also does.  To hold otherwise would be to open the door to authorizing the search of the residence of every employee of a corporation whose owners or operators are suspected of engaging in criminal activity.  Thus, it was entirely unlikely that law enforcement officers would find (nor did they in fact find) any evidence of a marijuana-related crime, such as documentation of sales or proceeds, at the residence of defendant.

In sum, there is no nexus in the affidavit between defendant or his home and any suspected criminal activity.  There is nothing in the affidavit, therefore, to support even a "colorable" argument for probable cause.

IT IS THEREFORE ORDERED that defendant's motion to suppress be, and the same hereby is, GRANTED.

DATED:  December 4, 2012

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE